# N. Y. SURROGATE'S COURT.

In the Matter of the Estate of Edward Lynch.

*Will — legacy — when interest begins to run.*

Where a sum is left in trust, with direction that the interest and income be applied to the use of a person, such person is entitled to interest from the death of the testator (*Following Cook* agt. *Meeker,* 36 *N. Y.*, 15).

The authorities on this subject collected in the opinion and carefully examined.

THIS is the petition of Elizabeth A. Lynch, executrix, &c., for leave to resign. The petition sets forth that she and Richard M. Harrison were appointed executors, but that Harrison did not qualify. That on the 4th of March, 1876, she obtained an order to advertise for claims, and did so; has paid all the debts presented, except eighty dollars, and she believes that there are no other debts unpaid; that she has paid all legacies, excepting $1,500, which she is directed by the will to hold in trust, and pay the income to Mrs. Ann Mahoney during her life, and upon her decease to pay said sum to her issue; that petitioner is the residuary legatee under the will, and believes she is entitled to the remaining assets of the estate, except the said $1,500 and eighty dollars, and whatever interest said Ann may be adjudged to be entitled to; that she has paid said Ann fifty-two dollars and fifty cents on account of the interest; that she is desirous to be relieved from her trust; and prays that she be allowed to pay the principal into this court for the benefit of said Ann, or that another trustee be appointed.

Matter of Lynch.

CALVIN, S.—It is consented that the executrix be allowed to resign, and the only question submitted is, when the interest on the sum left for the benefit of Ann Mahoney began to run. The language of the will in that respect is as follows: "I give to the executors of this, my will, the sum of $1,500 in trust, to invest the same and pay the income thereof to my sister Ann, wife of Martin Mahoney, of Saratoga Springs, during her life, and upon her death, to pay said sum to her children surviving her in equal shares." It is conceded that the personal property of the estate was not alone sufficient to pay the debts, but, together with the rent of the real estate, it was sufficient. That there was one parcel of real estate sold January 6, 1877, for $15,500, which sum, after deducting $5,000 of a prior mortgage, paid the legacies, and left but $5,000 to Mrs. Lynch. The legatee claims interest from May 31, 1875, the date of the death of the testator, and admits the receipt of fifty-two dollars and fifty cents on account. The executrix claims that interest runs only from July 20, 1876, a year from the date of granting letters.

Williams on Executors, at page 1221, states the general rule to be, that general legacies in their nature carry interest, and that interest is computed from the time at which the principal is actually due and payable, and that the executor is allowed by law one year from the testator's death to ascertain and settle his affairs, at the end of which time the court, for the sake of greater convenience, presumes the personal estate to have been reduced into possession. Upon that ground interest is payable from that time, unless some other period is fixed by the will; and the learned authority states the exceptions to this rule to be, that if a legacy is decreed to be a satisfaction of a debt, the court always allows interest from the death of the testator. In the case of a legacy given to a child by a parent, or one in *loco parentis*, the court will give interest from the death, to create a provision for its maintenance. That an annuity bestowed by will, without

Matter of Lynch.

mention of the time of payment, is considered as commencing from the death of the testator, and the first payment due at the expiration of a year. At page 1226 the same author says: "Again, in some instances, legacies payable at a future period will carry interest, although not given by a parent or a person in *loco parentis*, where there appears an intention on the part of the testator, that the legatees shall be maintained out of the property bequeathed to them."

In the case of *Lawrence* agt. *Embrey* (3 *Bradford*, 364) it was held that annuities are considered as commencing to run at the testator's death, and the first payment is not due until the end of a year.

A bequest of interest, dividends and income of a certain sum to be invested by the executors, does not begin to carry interest until the end of a year, at which time the investment ought to be made, and it is held in that case also that the provisions of the Revised Statutes, as to payment of debts and legacies, have not altered the common law rule, and that the delay of the probate does not deprive the legatees of interest on their legacies, after the expiration of a year from the testator's decease, and that where there is a gift for life of the income of the residue, without any direction to invest, the tenant for life is entitled to the income from the testator's death, on such investments as were then made, or as were subsequently made within a year, together with interest, on the amount not invested, valued as at the time of testator's decease.

But, as is well said by the late surrogate Tucker, in *The Matter of Fish's Estate* (19 *Abb. Pr.*, 209) the learned surrogate, in holding that the Revised Statutes had not changed the rule as to the payment of interest, had doubtless failed to see the then very late case of *Braddon* agt. *Halker* (12 *N. Y.*, 472), where, it seems to me, chief justice GARDINER, in giving the opinion of the court, has rightly held that the statute in question having prescribed the time when legacies are payable, that the interest should be held payable from the time when

Matter of Lynch.

the legacies became so payable, for it is the non-payment at the time prescribed which entitles a party to interest upon general legacies, and in the absence of a different provision, it would seem to be obvious that the interest should not be payable until the principal should be legally demanded, and I am therefore of the opinion that the statute in question does change the common-law rule in respect to interest upon general legacies; but the question submitted in this matter is, whether a bequest of interest upon a fund bequeathed in trust to be invested, payable to a person neither an infant nor widow, forms an exception to the general rule above stated, and surrogate BRADFORD, in the case above cited, holds substantially that it does not; but in the case of *Cooke* agt. *Meeker* (36 *N. Y.*, 15), chief justice DAVIES, at page 32, at the bottom, says: "The authorities would seem abundant, therefore, to sustain the doctrine that, when a sum is left in trust with direction that the interest and income should be applied to the use of a person, such person is entitled to the interest thereof from the date of the testator's death," and this authority is cited with approbation, in the case in 19 *Abbott*, above cited, and a careful consideration of the case of *Cooke* agt. *Meeker* will show that there are some material differences between that case and the one under consideration which fully justify the conclusion reached therein, and which did not, therefore, render it necessary that the learned judge, who delivered the opinion, should hold as above quoted. Indeed, that part of the opinion was clearly *obiter;* hence it becomes necessary to consider the cases which he has cited as authority for that conclusion, in order to determine its soundness. Mr. justice BOOKES, in *Cooke* agt. *Meeker* (*at p.* 24, *at the bottom*), in speaking of the facts of that case, says: "The estate was more than sufficient to satisfy all the legacies. It was well invested, on bonds and mortgages drawing interest, at the testator's decease. The executors were authorized to transfer existing securities in satisfaction of the legacies. One of the executors was made the trustee to take and hold the trust fund;

Matter of Lynch.

thus no new or especial investment was necessary. The beneficiary was an infant, with no other provision for her support or means of support, so far as the case discloses, and these facts constitute, as it seems to me, a material difference between that case and the present.

On page 19, in *Cooke* agt. *Meeker*, the learned chief justice says, at the bottom : " The weight of authority, undoubtedly, now is in favor of allowing the payment of annuities or income, to commence at the testator's death," to which he cites several authorities, which I deem it my duty to examine with care.

The first cited is *Craig* agt. *Craig* (3 *Barb. Ch.*, 76), which was the case of an annuity, and all the authorities concur that in such a case, where there is no direction as to the time when it shall commence, it commences at testator's death.

The next case cited is *Gibson* agt. *Bott* (7 *Vesey*, 96), the marginal note of which is, that an annuity commences from the death, and the first payment is due at the end of a year ; but a legacy does not begin to carry interest till the end of a year unless otherwise directed, which is fully sustained by the text.

The next is *Hearness* agt. *Goren* (9 *Vesey*, 553). In that case the testator bequeathed to his wife the interest of one-half of his property during her life, with liberty to dispose of one-half of said one-half to whom she might think proper. At her decease the other half to devolve upon his daughter.

The testator was a partner in a firm, and the articles of copartnership provided that at the death of either party during the period limited for the partnership — seven years — the business should be carried on to the joint account of the surviving copartners and heirs of the deceased, until June thirtieth, next following, if death happened three months preceding, otherwise to continue till the same date in the subsequent year, when the partnership should determine, and the state of the partnership be made up and divided, and the share belonging to the heirs should be paid one-half at the

end of one year, the other half at the end of two years after such determination.

The lord chancellor, at page 552, says: "It is not very well settled whether a tenant for life is entitled to interest from the death or from a year afterwards;" but in that case he was of opinion that a life tenant ought to have interest, at a given rate, from the death and determination of the partnership, and not the profit, and at the end of the partnership was entitled to interest upon the capital, though dead.

The case of *Augerstein* agt. *Martin* (*Turner & Russell*, 232) was a case where the testator devised lands to John Augerstein for life, remainder to his children. The residue of his personal estate, subject to the payment of debts, was to be laid out in the purchase of lands, to be settled to the same uses, with a proviso that the trust moneys, until so invested, might be invested in government or real securities, and directs the interest to be paid as the rent of the lands when purchased would be payable. A large portion of the testator's personal estate, not required for debts and legacies, was invested upon securities bearing interest. The tenant for life was held entitled to interest of that portion from the death of the testator.

The lord chancellor, at page 240, says: "The testator directs that when the personal estate shall be collected, not that the interest thereafter to arise shall be laid out with the principal, but shall be enjoyed by the person entitled to the rents and profits."

The question then, is, whether, as the testator has given the tenant for life an immediate interest in the real estate, and directs that, if in the course of a year an estate shall be bought, the tenant for life shall be entitled to the rents from the time of the purchase, although a year has not elapsed, and also directed that the personal estate shall be laid out on mortgage or in stocks, there cannot be any inconvenience in saying that the tenant for life is entitled to the interest of the personal estate from the death of the testator; and I think,

with respect to the interest of so much of the personalty bearing interest as is not necessary to be applied for the payment of debts or legacies, the tenant for life is entitled to it from the death of the testator.

In *Hewitt* agt. *Morris* (*id.*, 241) the testator directed his executors to invest the residue of his estate, after paying debts and legacies, in funds or securities, the interest to be paid to the tenant for life, and after his death the principal to be held in trust for his children. It was held that the tenant for life was entitled to interest accruing from a year next after the testator's decease upon funds in which the testator's property stood invested at the time of his death, and which were not required for payment of debts and legacies.

In *Hill* agt. *Hill* (3 *Vesey & Beals*, 183) it was held that a legacy to grandchildren, the object being for provision and maintenance, entitled the legatees to interest from the death.

In *Hilliard's Estate* (5 *Watson & Serjeant's Rep.*, 30) the testator gave and bequeathed unto his executors $1,000 in trust, to place the same out at interest in good securities, and pay and apply the interest and income thereof, as the same should be got in and received, unto his sister during her life, and, immediately after her decease, the principal sum to be equally divided between the children of his late brother.

It appeared that the deceased left investments in bonds, mortgages, &c., bearing interest amounting to over $44,000.

It was held that the sister was entitled to the interest for a year from the death of the testator.

SERGEANT, J., in delivering the opinion of the court, stated the principle to be that, where a sum of money is bequeathed, it does not carry interest with it for a year from the death of the testator, because he is not bound to pay it before the end of a year; and this is the rule, although the personal estate is invested in funds drawing interest; but to that rule there is an exception founded upon the intention of the testator and character and situation of the legatee, and other circumstances; but that, where the bequest is not of the corpus, but of an

income or annuity, there a contrary rule prevails, and the legatee, having an interest for life, is allowed interest from the death of the testator, citing *Eyre* agt. *Golding* (5 *Binn.*, 472); and at the bottom of the page he uses this language: "As between that case and the one before us, I perceive no difference. Interest is, in its nature, an annual profit, and a direction to pay interest makes it payable annually without any thing further." In *Eyre* agt. *Golding* the testator gave unto his daughter Rachel the interest of £400, to be paid her annually during her natural life, and after her decease it was given equally to her children.

Chief justice TILGHMAN, in his opinion, at page 475, says: "Where a legacy is to a child not otherwise provided for, interest is allowed from the testator's death."

It is contended, on the part of the executor, that that exception is confined to infant children, or at most to children who live in the father's family, and have no support independent of the legacy, and cannot be extended to a married woman who is maintained by her husband. * * *

"There is a difference between a legacy of a sum of money to one for a term of life and the bequest of a sum of money to be paid annually for life. In the former case, the legacy not being payable till the end of a year from the death of the testator, of course there is no interest for that year; but in the latter, the first payment of the annuity must be made at the end of the first year, or the intention of the testator is not complied with, and you must count the time immediately from his death, or the legatee will not receive an annuity annually during her life. Suppose she should live eighteen months and then die; according to the construction of the executor, she would not receive one-fourth. How, then, can she be said to receive the interest of $400 annually during her life? * * * A distinction is taken between a general legacy and a bequest of a sum of money to be paid annually; in the latter of which cases the first payment is to be made at the end of the first year from the testator's death, because it commences immediately on the happening of that event." * * *

Matter of Lynch.

A careful examination of the treatise upon this subject, together with the decisions both English and American, leaves the question in very serious doubt, and but for the clear language of the learned judge in *Cooke* agt. *Meeker*, above cited, and the two Pennsylvania authorities, I should be inclined to follow the decision by the late surrogate BRADFORD, in *Lawrence* agt. *Embrey*, or when the principle is recognized that an executor has a year in which to make investments, and the will in question directs the investment of the $1,500, and it appears by this case that the estate in question had no securities drawing interest out of which payment could be made for the first year, and no investment having been made nor any suggestion that the executor had been derelict in the performance of his duty in that respect, it seems to me that there is a substantial distinction between an annuity as such and the interest upon a sum to be invested, payable annually in this manner, although it does partake in some sense of the nature of an annuity, but an annuity is chargeable upon the whole body of the estate, while the interest directed to be paid by the will under consideration is only such interest as can be realized from the investment of that sum ; and if it should be invested and fail to yield an income, the estate would not be charged with the deficiency.

But I do not feel at liberty to disregard the plain and emphatic language of the learned chief justice in *Cooke* agt. *Meeker*, which may be presumed to have received the attention and scrutiny of the other judges of the court, though it may not have been necessary to the decision of that case; besides, the two Pennsylvania cases above cited seem to be directly upon the point involved in this case ; and, therefore, while I am not able to resist the force of the argument to the contrary, above suggested, I feel constrained to respect the above authorities, and to hold that the interest upon the legacy in question began to run from the decease of the testator, and that the executor be directed to pay accordingly.