VAN BRUNT, P. J.:

Judgment reversed, with costs.

---

IN THE MATTER OF THE PETITION OF HUGH M. STANFIELD FOR THE PAYMENT OF INTEREST UPON A CERTAIN LEGACY.

64  277
135a 292
64  377
142a 631

*Bequest — of the income on a sum held in trust — it bears interest from the death of the testator, payable annually — the rate of interest.*

Mark M. Stanfield left a will by which, "after payment of his just debts," he bequeathed the income of certain sums to certain persons named therein, and directed his executor to invest such sums and pay over the income. Twenty months after the will was offered for probate two of the persons entitled to income under the will petitioned the surrogate for an order directing the executor to pay over such income. The executor, a corporation, answered that it had not invested the moneys because it had never had funds sufficient to pay the debts and legacies and establish the trusts provided for.

It appeared that the value of the estate was large, and that the personalty had earned over three per cent.

*Held,* that where there is a bequest of the income of moneys held in trust, interest runs from the death of the testator, and that the rule relative to legacies did not apply.

That the proper rate of interest allowable, upon the facts stated, was three per cent. That the proper time of payment was annually.

APPEAL by the Knickerbocker Trust Company, as executor under the will of Mark M. Stanfield, deceased, from an order of the Surrogate's Court of the county of New York, entered on the 3d day of March, 1892, directing such executor to pay to Hugh M. Stanfield interest on $10,000, at three per cent per annum annually from May 28, 1890, until the further direction of the court; also an appeal by the petitioner in the proceeding, Hugh M. Stanfield, from so much of said order as fixed the rate of interest at three per cent per annum instead of at the legal rate.

*Lowery, Stone & Auerbach,* for the Knickerbocker Trust Company, appellant.

*William A. Boyd,* for Hugh M. Stanfield, petitioner, respondent.

*John Notman,* for the guardian.

O'BRIEN, J.:

The petitioners, Hugh M. Stanfield and Henry Stanfield, are adult sons of Mark M. Stanfield, deceased, who died on May 28, 1890, leaving a last will and testament, in which it was provided:

"After the payment of my just debts, I give and devise unto George Otis the income of twenty-five thousand dollars for his life; to my son, Hugh M. Stanfield, the income of twenty thousand dollars for his life; to Florestine Stanfield, wife of Henry Stanfield, during the life of herself and child, the income of twenty thousand dollars; to Henry Stanfield the income of ten thousand dollars, and to John C. Parcher the income of ten thousand dollars; and I direct my executors, hereinafter named, to invest said sums in bond and mortgage or government bonds, and pay the income to the respective parties named."

Pending a contest over the probate of the will, a temporary administrator was appointed, and qualified July 25, 1890.

On January 20, 1892, the executor not having invested the principal sums, the income of which was devised to the two sons, Hugh M.

and Henry R., they commenced proceedings before the surrogate by petition and notice of motion for an order directing the payment to them of interest upon the principal amounts.

The executor, in answer to the petition, showed to the surrogate that the principal sums had not been invested, because the executor had never had in its possession sufficient funds to enable it to provide for the payment of debts, to pay legacies and to set up the trusts provided by the will.

The questions submitted to the surrogate for decision were:

1. The devises being given "after the payment of my just debts," did they become effective or could interest accrue on them before the debts were paid?

2. From what time should interest, if allowed, be computed?

3. At what periods should interest be paid?

4. At what rate should interest be computed?

The surrogate decided that interest should be paid by the executor upon these bequests from the date of the death of Mark M. Stanfield; that such interest should be computed at the rate of three per cent per annum; and that payments of interest should be made annually.

From that decision these appeals are taken.

We regard the law as settled that as to general legacies they are not payable until one year after the issuance of letters on the estate, and that as to an annuity legacy it begins to run from the death of the testator.

The question here presented is, what is the rule as to the bequests of income? Are we to follow the one governing the payment of annuities or of general legacies?

In *Cooke* v. *Meeker* (36 N. Y., 15), it is said: "The authorities would seem abundant, therefore, to sustain the doctrine that when a sum is left in trust, with a direction that the interest and income should be applied to the use of a person, such person is entitled to the interest thereof from the date of the testator's death. Especially is this so when, as in the will under consideration, it appears clearly to have been the intent of the testator that the legacy should be paid by a transfer of bonds and mortgages bearing interest at the time of his death." Appellants insist that this statement is *obiter* and in direct antagonism to the general rule and weight of author-

ity, holding that interest upon legacies commences to run only after the expiration of a year from the granting of letters testamentary — that, as respects legacies, a direction in a will that it be paid, with interest, but specifying no time from which interest is to be computed, requires, in the absence of any special circumstance, that interest commence only after the expiration of the year, except in certain cases of a testator who is a parent or stands in *loco parentis* to the legatee, in which case, if the legatee be not an adult, interest on the legacy should be allowed, as a maintenance, from the time of the death of the testator.

In this case, however, it must be remembered, as already stated, that the question is not as to when interest begins to run upon a legacy or when an annuity is payable; the question being from what time interest upon bequests are payable.

Although some doubt was expressed as to the correctness of the rule stated in *Cooke* v. *Meeker* (*supra*), in two cases which arose and were decided by former surrogates — *In re Lynch Estate* (52 How. Pr., 367); *Nahmens* v. *Copely* (2 Dem. Surrogate, 253) — we no longer regard it, so far as this court is concerned, as an open question.

In *Barrow* v. *Barrow* (8 N. Y. Supp., 783), the cases are collated and discussed, and the rule as laid down in *Cooke* v. *Meeker* followed. This doctrine was applied by Mr. Justice DANIELS in deciding *Pierce* v. *Chamberlain* (41 How. Pr., 501); and the same learned judge, in his opinion in *Powers* v. *Powers* (1 N. Y. Supp., 636), which was a decision of this General Term, held that a beneficiary, under a will bequeathing a fund to a trustee in trust to invest the same and pay over the income, is entitled to such income from the time of the testator's death where the trust has been invested by the testator and had yielded income from such time.

We are unable to see any distinction in principle between the case last referred to and the one at bar. It here appears that the income received within one year and eight months from the death of the testator was $30,029 95, which, according to the valuation of the personal estate, which was stated to be $317,766.66, would make a showing of interest herein of about six per cent. If, however, we take the executor's figures of the amount of income received and the percentage which such income bears to the appraised value of

the personalty, it is conceded to have been three and seven one-hundredths per cent.

It was within the discretion, therefore, of the learned surrogate, in the absence of facts showing that the estate earned the full legal rate of interest, to determine what amount should be allowed, reference being had to the percentage of income of the appraised value of the personalty.

We do not think that the learned surrogate was bound to allow any greater percentage, upon the facts appearing before him, than the three per cent granted. In other words, it was a matter within the discretion of the surrogate, which, upon the facts, we do not find was unwisely exercised. We think, therefore, that the order appealed from should be affirmed; and, inasmuch as all parties appealed from some part of the order, it should be without costs of appeal to any of the parties.

VAN BRUNT, P. J., and ANDREWS, J., concurred.

Order affirmed, without costs.